IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| PAUL CARPENTER and GINGER CARPENTER, Parents and Next Friend of O.C., a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09-2608-STA-tmp |
| VICTORIA'S SECRET STORES, LLC; VICTORIA'S SECRET DIRECT BRAND MANAGEMENT, LLC; and VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | ) ) ) ) ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALICIA GRANT a/k/a ALICIA VANLANDEGHEN, | ) ) ) | |
| Third-Party Defendant. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants/Third-Party Plaintiffs' ("Defendants") Motion for Summary Judgment (D.E. # 57), filed on November 30, 2011. Neither Plaintiffs nor Third-Party Defendant Alicia Vanlandeghen ("Vanlandeghen") have responded to Defendants' Motion. For the reasons set forth below, Defendants' Motion is **GRANTED**.

**BACKGROUND**

Plaintiffs filed this products liability action in Shelby County Circuit Court on January

1

12, 2009.  (D.E. # 1 at 6.)  They alleged strict liability, negligence, breach of warranty, and negligent misrepresentation.  (*Id.* at 10-12.)  Defendants removed the case to this Court on February 9, 2009.  (D.E. # 1.)  Defendants filed their Answers on February 13, 2009, and March 12, 2009.  (D.E. # 3, 12-13.)  Also on March 12, 2009, Plaintiffs dismissed their Complaint against Defendants Limited Brands Store Operations, Inc., Limited Brands Direct Fulfillment, Inc., and Limited Brands, Inc., leaving only those Defendants captioned above as Defendants in this case.  (D.E. # 11 at 2.)  Defendants filed their Third-Party Complaint against Vanlandeghen on July 22, 2010, alleging indemnification and contribution under Tennessee's comparative fault laws.  (D.E. # 38.)

On September 15, 2010, Vanlandeghen filed a Motion to Dismiss for lack of personal jurisdiction, which the Court referred to the Magistrate Judge.  (D.E. # 43, 45.)  After the Magistrate Judge recommended denying the Motion, the Court adopted his Report and Recommendation in full.  (D.E. # 47, 48.)  Vanlandeghen answered Defendants' Third-Party Complaint on May 4, 2011.  (D.E. # 51.)  The parties filed a Stipulation regarding agreed-to, neutral flammability testing ("the Garment Testing") of an exemplar of the pajamas worn by Plaintiffs' daughter on August 11, 2011.  (D.E. # 54.)  Defendants subsequently filed the Motion for Summary Judgment now before the Court on November 30, 2011.  (D.E. # 57.)  Neither Vanlandeghen nor Plaintiffs have filed a Response.  Therefore, the following facts are undisputed for purposes of this Motion.

Shortly before Christmas in December of 2007, Brandon Kizer ("Kizer") went to a Victoria's Secret store at the Wolfchase Galleria Mall in Shelby County, Tennessee, to purchase gifts for his then-girlfriend, Plaintiff Ginger Carpenter ("Carpenter") and her two daughters,

2

minor Plaintiff Olivia Carpenter ("Olivia") and Anna Lynn Carpenter ("Anna Lynn"). (Defs.' Statement of Undisputed Material Facts, D.E. # 57-2, at 2.) Kizer's sister, Megan Kizer Sealy ("Sealy"), accompanied them. (*Id.*) Born on July 31, 1999, Olivia was eight years old at the time, nearly four feet tall, and weighed about seventy-two pounds. (*Id.*) Sealy was five feet, four inches tall, and Olivia came up to the midway point between her shoulder and elbow. (*Id.*) All of these individuals are residents of Mississippi.

### The Pajamas and the Incident

At Victoria's Secret, Sealy selected a pair of pajamas for both Olivia and Anna Lynn, and Kizer purchased them.[1] (*Id.*) The Pajamas were size extra small. (*Id.*) When Sealy measured the length of the Pajamas' bottoms against her own body, she noted that the length was just about the right size for herself. (*Id.*) When Olivia put on the Pajamas, she had to create two rolls at the bottom of the Pajamas' legs and two rolls at the end of the Pajamas' sleeves. (*Id.* at 3.) The Pajamas' top hung down to Olivia's mid-thigh and was worn untucked. (*Id.*) Carpenter understood that the Pajamas were not children's pajamas. (*Id.*) But it did not matter to her whether Olivia wore children's sleepwear garments or non-children's sleepwear garments to bed. (*Id.*)

On January 12, 2008, Olivia went to Vanlandeghen's home to attend a sleepover with Vanlandeghen's daughter. (*Id.*) After dropping Olivia off at Vanlandeghen's home, Carpenter took a tour of the condominium and looked at the bathroom where the Incident later occurred. (*Id.*) Vanlandeghen's home is in Mississippi. When she looked in the bathroom, Carpenter saw a lit scented candle on the sink's countertop. (*Id.* at 4.) She did not comment on the lit candle to

---

[1] The Court will refer to Olivia's pajamas as "the Pajamas."

Vanlandeghen.  (*Id.*)  She then left the home, but Olivia stayed for the overnight party.  (*Id.* at 3.)  Vanlandeghen never explicitly warned Olivia or the sleepover's other guests about the lit candles.  (*Id.* at 4.)  However, Vanlandeghen saw that Olivia was wearing the Pajamas and that they appeared large on her.  (*Id.*)  Olivia had rolled up the bottom of the Pajamas so that they were not too long to walk in.  (*Id.*)

At some point during the evening, Olivia and the other sleepover guests went into the bathroom with the lit candle.  (*Id.*)  At that time, Vanlandeghen was in the living room working on a laptop computer.  (*Id.*)  In the bathroom, Olivia and her friends were playing school, and Olivia was sitting on the counter where the lit candle was located.  (*Id.*)  She moved the candle over but, because the Pajamas were too big, the top of the Pajamas caught fire ("the Incident").  (*Id.*)  Olivia knew about the danger of lit candles and fires, and she understood that her clothing should not touch flames or it could catch on fire.  (*Id.*)  Olivia learned fire safety from her mother and from school, and she knew not to play with matches or lighters.  (*Id.*)

### Expert Testimony

Plaintiffs failed to disclose any product defect experts on or before their expert disclosure deadline of August 15, 2011, or thirty days after the completion of the Garment Testing.  (*Id.* at 5.)  Defendants' expert issued a report containing the following findings.  The Pajamas were safe to the extent that they were intended to be used and worn by adults.  (*Id.*)  The Consumer Product Safety Improvement Act defines a "children's product" as a "consumer product designed or intended primarily for children [twelve] years of age or younger."  (*Id.*)  The Garment Testing confirmed that the Pajamas conform to all applicable flammability regulations of the Flammable Fabrics Act, 16 C.F.R. § 1610.  (*Id.*)

Moreover, the Pajamas were properly regulated by the Consumer Product Safety Commission ("CPSC") as "General Wearing Apparel." (*Id.*) The Children's Sleepwear Standards do not apply to the Pajamas because the Pajamas were an adult-sized garment sold in an adult store. (*Id.*) The Pajamas were properly labeled under federal law, and the risk that clothing can ignite and burn is an open and obvious one such that flammability warnings are not required by federal law. (*Id.*)

The Pajamas ignited because Olivia wore them as oversized and loose-fitting sleepwear in contravention of CPSC guidelines. (*Id.*) Moreover, the Pajamas caught fire because Vanlandeghen permitted Olivia and the sleepover's other guests to play near the lit candle unattended despite the candle's directions that it should be kept out of reach of children. (*Id.*)

Although Plaintiffs failed to disclose any experts following the Garment Testing, Defendants disclosed the expert report of Dr. Phillip Wakelyn, Ph.D. ("Dr. Wakelyn"), a textile chemist, who opined that the Pajamas met all flammability standards, were manufactured correctly, were reasonably safe in design, and were prudently and properly marketed. (Aff. of Dr. Wakelyn, D.E. # 57-6.) Dr. Wakelyn also stated that the danger that the Pajamas would ignite and burn if allowed to come in contact with fire was open and obvious and understood by the average consumer. (*Id.*) Dr. Wakelyn was a Senior Scientist at the National Cotton Council of America from 1973 to 2006 and has been involved with regulations and research on textiles' flammability for over forty years. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

court shall grant summary judgment if the movant shows that there is no genuine

5

dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must present some "specific facts showing that there is a genuine issue for trial."[4] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8] In this Circuit, "this requires the nonmoving party

---

[2] Fed. R. Civ. P. 56(a).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251-52.

[8] *Celotex*, 477 U.S. at 322.

to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[9]

## ANALYSIS

Because the Court is sitting in diversity, it must apply state substantive law.[10] Accordingly, "a federal court must apply the choice of law rules of the state in which it sits,"[11] and the Court will apply Tennessee's choice of law rules.  Tennessee has adopted the Restatement (Second)'s rule for determining which state's law to apply in a tort case: "the Restatement provides that the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation."[12]  Under this principle, the Court finds that the Incident occurred in Mississippi, and no other state has a more significant relationship to the litigation.  Plaintiffs merely purchased the Pajamas in Tennessee, and their Complaint does not allege any other ties to Tennessee which would result in a more significant relationship to the litigation than Mississippi.  Accordingly, Defendants' reliance on Tennessee law throughout their Motion is incorrect and misplaced.  However, because Plaintiffs have failed to bring forth any expert evidence or to respond to Defendants' Motion, the Court will proceed to

---

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[11] *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85 (6th Cir. 1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *see generally Erie*, 304 U.S. 64 (1938) (holding that federal courts with diversity jurisdiction must apply state substantive law and federal procedural law).

[12] *Hataway v. McKinley*, 830 S.W.2d 53, 59-60 (Tenn. 1992) (citing Restatement (Second) of Torts § 146)).

evaluate Defendants' arguments under Mississippi law.[13]

### Strict Liability

In their Complaint, Plaintiffs allege that Defendants "designed, manufactured, inspected, tested, sold, and distributed" the Pajamas and that the Pajamas were in the same or similar condition as when Defendants released the Pajamas into the stream of commerce.[14]  Plaintiffs appear to raise two types of claims under the Mississippi Products Liability Act ("MPLA"): a design defect claim and inadequate warnings or instructions.  First, they state that the Pajamas "were in a defective condition and/or unreasonably dangerous in that they permitted an open flame to quickly consume the clothing to cause significant burn injuries to . . . Olivia without meeting appropriate flammability standards and without being labeled to instruct purchasers that such products did not meet appropriate flammability standards."[15]  Second, they allege that the Pajamas were in a "defective condition and/or unreasonably dangerous because they failed to resist flammability to the extent that would be reasonabl[y] anticipated by consumers."[16]

The MPLA provides the exclusive remedy for strict-liability claims against a manufacturer or seller for damages caused by a product that has a design defect rendering it

---

[13]   Defendants note that "there does not appear to be a substantive difference between Tennessee and Mississippi law." (Defs.' Mot., D.E. # 57-1, at 8 n.1.)  As such, the Court believes that Defendants' arguments would remain unchanged under the application of Mississippi law and that any re-briefing of Defendants' Motion is not necessary.

[14]   (Compl. ¶ 20.)

[15]   (Id. ¶ 21.)

[16]   (Id. ¶ 22.)

8

unreasonably dangerous.[17] The elements of a design defect claim are as follows: (1) the product was "designed in a defective manner;" (2) which rendered the product "unreasonably dangerous" to the plaintiff; (3) that the "defective and unreasonably dangerous condition . . . proximately caused" the plaintiffs' damages; (4) that the damages were not caused by an "inherent characteristic" of the product which "cannot be eliminated without substantially compromising the product's usefulness or desirability" and which an "ordinary person" would recognize; (5) that the defendant knew or should have known of the "danger that caused the damage"; *and* (6) that "there existed a feasible design alternative that would have to a reasonable probability prevented the harm" without also "impairing the utility, usefulness, practicality, or desirability" of the product.[18] For a plaintiff to prevail on a strict products liability claim, he or she must prove that a design defect or a failure to adequately warn or instruct exists under the MPLA, which requires him or her to present expert testimony identifying a defect.[19] Failure to present expert proof on the elements of a strict products liability claim is "a critical matter" which is often "fatal to [a plaintiff's] case."[20]

In their Motion, Defendants argue that the consumer expectation test is inapplicable to the case at bar because it is undisputed that "the ordinary consumer in general and [P]laintiffs in

---

[17] *Lawson v. Honeywell Int'l, Inc.*, 75 So.3d 1024, 1027 (Miss. 2011) (citing Miss. Code Ann. § 11-1-63).

[18] *McKee v. Bowers Window & Door Co., Inc.*, 64 So.3d 926, 937-38 (Miss. 2011) (emphasis in original) (citing Miss. Code Ann. § 11-1-63(a), (b), (f)).

[19] *Davis v. Ford Motor Co.*, 375 F. Supp. 2d 518, 523 (S.D. Miss. 2005) (noting that "expert testimony which identifies a *defect* is essential" (emphasis in original)).

[20] *Hammond v. Coleman Co., Inc.*, 61 F. Supp. 2d 533, 542 (S.D. Miss. 1999).

particular appreciate that ordinary clothing will burn if allowed to come in contact with a flame."[21] Defendants point out that the Pajamas were not Children's Sleepwear as defined at 16 C.F.R. 1615.1(a) and that Plaintiffs had no expectation that Olivia was sleeping in Children's Sleepwear garments.[22] Moreover, Defendants argue that the consumer expectation test is inapplicable to this case.[23] Additionally, they argue that "the undisputed evidence indicates that the [Pajamas] meet the applicable flammability standards" and that their expert testimony addresses the adequacy of the design, testing, and marketing of the Pajamas.[24] Without expert testimony, Defendants submit that Plaintiffs would be unable to prove their case at trial and that they cannot defeat summary judgment.

The Court agrees.[25] Under Mississippi law, it appears that Plaintiffs would need to present expert testimony to prove the elements of their strict products liability claim. However, they have failed to do so. In light of this failure, the Court finds that Plaintiffs have failed to create a question of fact as to whether Defendants are liable under strict products liability. As such, Defendants' Motion for Summary Judgment in this regard is **GRANTED**.

## Negligence

In their Complaint, Plaintiffs allege that "[a]s designer, manufacturer, and distributor of

---

[21]   (Defs.' Mot., D.E. # 57-1, at 10.)

[22]   (*Id.*)

[23]   (*Id.* at 11.)

[24]   (*Id.*)

[25]   Because Plaintiffs have not challenged Defendants' expert's qualifications, the Court assumes that Dr. Wakelyn is a qualified expert satisfying *Daubert*'s requirements.

the [Pajamas], Defendants had a duty of reasonable care in the design, manufacture, testing, marketing, sale, and distribution of the [P]ajamas into the stream of commerce."[26] They allege that "Defendants breached their duty of reasonable care by failing to properly design, manufacture, test, market, sell, and distribute the pajamas worn by Olivia. . . ."[27] Moreover, Plaintiffs allege that Defendants directly and proximately caused Olivia's injuries.[28]

In Mississippi, negligence in products liability actions consists of the same four elements common to all negligence law: "(1) duty; (2) breach of that duty; (3) nexus, causation, or proximate cause; and (4) damages."[29] Where a negligence claim fails to present any new discussion or claim that does not relate back to the products liability claim previously raised, the negligence claim may be legally insufficient to survive summary judgment.[30]

Here, the Court is confronted with just such a claim. Defendants argue they have presented expert proof that the Pajamas were not defectively designed or manufactured or improperly tested, marketed, or sold.[31] As such, they argue that Plaintiffs have failed to come forward with expert evidence to counter their expert proof, and Defendants imply that Plaintiffs have failed to create a genuine dispute as to whether Defendants breached their duty.[32] The Court

---

[26] (Compl. ¶ 29.)

[27] (*Id.* ¶ 30.)

[28] (*Id.* ¶ 31.)

[29] *McKee*, 64 So.3d at 939-40.

[30] *See id.* (citing *Moss v. Batesville Casket Co., Inc.*, 935 So.2d 393, 406 (Miss. 2006)).

[31] (Defs.' Mot., D.E. # 57-1, at 10-11.)

[32] (*Id.*)

11

finds that Plaintiffs' failure to come forward with expert proof is fatal to their negligence claim; they have failed to create a factual dispute related to Defendants' breach of their duty to safely design, manufacture, test, market, and sell the Pajamas. Therefore, Defendants' Motion for Summary Judgment in this regard is **GRANTED**.

### Breach of Warranty

In their Complaint, Plaintiffs allege that "Defendants, in the marketing, distribution, and/or sale of the [Pajamas], breached its warranties, both express and implied, as stated in Tenn. Code Ann. §§ 47-2-313, 47-2-314, and 47-2-315, including its warranty of fitness for a particular purpose."[33] They submit that this alleged breach was a "direct, proximate, and consequential" cause of their damages.[34]

Mississippi's UCC section related to express warranties by affirmation, promise, description, or sample provides that express warranties by the seller are created as follows:

> (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description; (c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.[35]

Additionally, "[i]t is not necessary to the creation of an express warranty that the seller use

---

[33] (Compl. ¶ 33.) Tenn. Code Ann. § 47-2-313 is Tennessee's UCC code section related to express warranties by affirmation, promise, description, or sample; Tenn. Code Ann. § 47-2-314 relates to the implied warranty of merchantability; and Tenn. Code Ann. § 47-2-315 contains the implied warranty of fitness for a particular purpose. The Court will rely on Mississippi's parallel UCC sections, Miss. Code Ann. §§ 75-2-313, 75-2-314, and 75-2-315.

[34] (*Id.* ¶ 34.)

[35] Miss. Code Ann. § 75-2-313(1).

formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty."[36] Section 75-2-314 contains the UCC's implied warranty of merchantability, which only applies to merchants.[37] For goods to be merchantable, they must be at least such as:

> (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.[38]

Finally, Mississippi's UCC implied warranty of fitness for a particular purpose provides as follows:

> Except as otherwise provided in this section, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose. Provided, however, with respect to the sale of cattle, hogs and sheep, there shall be no implied warranty that the cattle, hogs and sheep are free from sickness or disease at the time the same is consummated, conditioned upon reasonable showing by the seller or his agent that all state and federal regulations pertaining to animal health were complied with. Nothing in this section shall prohibit the express disclaimer or express modification of any implied warranties of fitness for a particular purpose or any express limitation of remedies for breach of such warranties concerning computer hardware, computer software, and services performed on computer hardware and computer software, which are sold between merchants.[39]

Defendants appear to imply that they have not breached any warranty, express or

---

[36]  *Id.* § 75-2-313(2).

[37]  *Id.* § 75-2-314(1).

[38]  *Id.* § 75-2-314(2).

[39]  *Id.* § 75-2-315.

13

implied.[40]  They argue that Plaintiffs' breach of warranty claim relies on alleged representations made by Defendants, but Plaintiffs have not offered any evidence of these representations other than the Pajamas themselves.[41]

The Court finds that Plaintiffs have failed to come forward with any "affirmations of fact or promise" made by Defendants regarding a breach of express warranty.  Defendants did not provide samples of the Pajamas to persuade Plaintiffs to buy them, nor did Plaintiffs purchase the Pajamas based on any description of them by Defendants.  Moreover, Dr. Wakelyn concluded that the Pajamas conform to all requirements of adult sleepwear.  Therefore, the Court now turns to Plaintiffs' implied warranty claims.

As to the implied warranty of merchantability, Defendants' expert stated that the Pajamas were fit for their ordinary purpose—serving as pajamas for adults—and that they did not vary from the typical type of similar pajamas sold by Defendants.  Moreover, under the CPSC guidelines, the Pajamas were properly labeled.  Therefore, the Court finds that the Pajamas did not breach the implied warranty of merchantability.  Nor did they breach the implied warranty of fitness for a particular purpose.  The Garment Testing confirmed that the Pajamas conformed to the flammability requirements of adult sleepwear, and Plaintiffs do not dispute that they knew the Pajamas were adult sleepwear when they bought the Pajamas for Olivia.  Therefore, the Court finds that Plaintiffs have failed to present any evidence on their breach of warranty claim, and Defendant's Motion for Summary Judgment in this regard is **GRANTED**.

### Negligent Misrepresentation

---

[40]    (Defs.' Mot., D.E. # 57-1, at 10-11.)

[41]    (*Id.* at 10.)

In their Complaint, Plaintiffs allege that Defendants have "a duty to properly and reasonably represent the nature, purpose, and appropriate uses of their pajamas and other apparel."[42]  They state that "Defendants, in the marketing, sale, and distribution of the [Pajamas], negligently supplied false and misleading information to consumers, or omitted such correct information as would permit a reasonable consumer to make an informed decision."[43]  Plaintiffs point to Defendants' failure to indicate that the Pajamas "were not appropriate to be worn by children and/or that the [Pajamas] failed to meet appropriate flammability standards."[44]  Plaintiffs also allege causation and that Defendants supplied information that a reasonable consumer would justifiably rely upon when purchasing the Pajamas.[45]

In Mississippi, a negligent misrepresentation claim is composed of five elements:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.[46]

Defendants argue that Plaintiffs have offered no evidence that they made any representations to Plaintiffs "aside from the [P]ajamas themselves."[47]

---

[42]  (Compl. ¶ 36.)

[43]  (*Id.* ¶ 37.)

[44]  (*Id.*)

[45]  (*Id.* ¶ 38-39.)

[46]  *Mladineo v. Schmidt*, 52 So.3d 1154, 1164-65 (Miss. 2010).

[47]  (Defs.' Mot., D.E. # 57-1, at 10.)

15

The Court finds that Plaintiffs' negligent misrepresentation claim must fail. Not only have they failed to identify any alleged misrepresentations or omissions of fact, they have not put forth evidence that Defendants did not exercise the required degree of diligence and expertise in the design, manufacture, use, and sale of the Pajamas. The Pajamas were meant for adults, not children, but Plaintiffs purchased them for Olivia knowing that they were adult pajamas. Defendants' evidence confirms that the Pajamas conformed to federal flammability labeling requirements, and they were not defective. Accordingly, the Court finds that Plaintiffs have failed to make out a negligent misrepresentation claim, and Defendants' Motion for Summary Judgment as to this claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. Because Defendants' Third-Party Complaint alleged comparative fault only, and Defendants have prevailed in this action, their Third-Party Complaint is hereby dismissed.

**IT IS SO ORDERED.**

                                                   **s/ S. Thomas Anderson**
                                                   S. THOMAS ANDERSON
                                                   UNITED STATES DISTRICT JUDGE

                                                 DATE: March 31, 2012.